UNITED STATES of America, Plaintiff–Appellee,

v.

Arthur David BRUDER, Defendant– Appellant.

No. 90–1931.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1990.

Decided Sept. 27, 1991.[1]

**1.** After oral argument in this matter, the court determined that the principal issue under consideration ought to be decided by the entire court. Further oral argument was deemed unnecessary. Accordingly, the panel assignment is vacated.

Andrew B. Baker, Jr., Asst. U.S. Atty. (argued), Office of the U.S. Atty., Dyer, Ind., Thomas O. Plouff, Asst. U.S. Atty., Office of the U.S. Atty., South Bend, Ind., for U.S.

Kenneth Hays (argued), Weisman & Hays, South Bend, Ind., for Bruder.

RIPPLE, Circuit Judge.

Arthur Bruder pleaded guilty under a plea agreement to being a convicted felon in possession of a firearm, and to possession of an unregistered firearm. The district court refused to group these two offenses for the purpose of sentencing. Mr. Bruder appealed. He argues that the district court erred when it failed to group the offenses and that the court should have given him a two-level reduction in his offense level because of his post-offense rehabilitation. For the following reasons, we reverse the district court's decision not to group Mr. Bruder's offenses and remand for sentencing; we affirm the court's refusal to give a two-level reduction for post-offense rehabilitation.

## I

## BACKGROUND

### A. *Facts*

When the Cook County Sheriff's Department evicted James Foster from his apartment, the officers discovered a loaded sawed-off shotgun. Further investigation revealed that the weapon was unregistered and belonged to Mr. Bruder, a convicted felon. Mr. Bruder had given the shotgun as collateral to Foster's son.

· Mr. Bruder was indicted on three counts: being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); and unlawful transfer of an unregistered firearm in violation of 26 U.S.C. § 5861(e). On January 17, 1990, Mr. Bruder pleaded guilty under a plea agreement to the first two charges. The agreement provided that the district court would impose the minimum sentence within the applicable range established by the United States Sentencing Guidelines.

The presentence report grouped the two offenses to which Mr. Bruder pleaded guilty for the purpose of determining Mr. Bruder's base offense level. This grouping resulted in an offense level of 12, less two levels for acceptance of responsibility. The

adjusted offense level of 10 yielded a guideline range of 10–16 months.

The government objected to this grouping. If the offenses are not grouped, the offense level would be 14, less two levels for acceptance of responsibility. The adjusted offense level of 12 would result in a guideline range of 15–21 months.

B. *District Court Opinion*

The district court began its analysis by noting that the guidelines provide that "all counts involving substantially the same harm" should be grouped. *United States v. Bruder*, Mem. op. at 2–3 (quoting U.S.S.G. § 3D1.2). The court stated that grouping of counts usually occurs in cases involving multiple counts of drug offenses or embezzlement; in such cases, the total quantity of drugs involved or total loss to the victim is aggregated to obtain one offense level. Multiple counts under these circumstances, noted the district court, are aggregated because the offenses involve the same harm to society. *Id.* at 3. However, in the district court's view, Mr. Bruder's offenses involved two different and distinct harms to society: "In enacting 18 U.S.C. § 922(g), Congress sought to keep firearms out of the hands of persons most likely to misuse them, that is, convicted felons. In enacting 26 U.S.C. § 5861(d), Congress sought to regulate the importation, manufacture, and transfer of lethal weapons by requiring the registration of these weapons." *Id.* The court noted the guidelines requirement that "for so-called 'victimless' crimes (crimes in which society at large is the victim), the grouping decision must be based primarily upon the interest invaded by each offense." U.S.S.G. § 3D1.2. Because the court found that Mr. Bruder's offenses were victimless crimes and invaded separate interests, the court refused to group the two offenses. Mem. op. at 4–5.

The court next addressed Mr. Bruder's claim that it should depart below the applicable guideline range because his post-offense rehabilitation was mitigating conduct not adequately considered by the guidelines. *Id.* at 5. Although the court noted

that 18 U.S.C. § 3553(b) permits departure when the guidelines did not adequately consider a factor, it determined that Mr. Bruder's conduct was equivalent to acceptance of responsibility—and Mr. Bruder already had received a two-level reduction on this basis. The district court refused to give Mr. Bruder "double credit for his rehabilitative conduct." *Id.* at 7–8. Therefore, the court found that Mr. Bruder's offense level was 12, and sentenced him to 15 months' imprisonment.

II

ANALYSIS

A. *Standard of Review*

Our review of the sentence imposed by the district court under the guidelines is governed by 18 U.S.C. § 3742(e) and (f). Section 3742(e) essentially provides that appellate courts must determine if a sentence was imposed in violation of the law, resulted from an incorrect application of the guidelines, was imposed for an offense not considered by the guidelines, or is outside the applicable guideline range and unreasonable. *See United States v. Guerrero*, 894 F.2d 261, 265 (7th Cir.1990). Therefore, we review interpretations of the scope of the guidelines *de novo*. *See United States v. Bigelow*, 914 F.2d 966, 973 (7th Cir.1990); *United States v. Reynolds*, 900 F.2d 1000, 1004 (7th Cir.1990); *United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir.1990). Moreover, "a standard akin to that used in addressing questions of law should be used when reviewing the initial determination that a mitigating or aggravating circumstance was not 'adequately taken into consideration'" by the Sentencing Commission when it formulated the guidelines. *United States v. Goff*, 907 F.2d 1441, 1445 (4th Cir.1990) (quoting 18 U.S.C. § 3553(b)). Subsection 3742(e) also requires reviewing courts to give due regard to the district court's credibility judgments and factual findings. We review such determinations under a clearly erroneous standard. *See Bigelow*, 914 F.2d at 1004; *United States v. White*, 903 F.2d 457, 461 (7th Cir.1990).

B. *Application to This Case*

1. Grouping

Mr. Bruder claims that the offenses to which he pleaded guilty involve essentially the same harm under the guidelines grouping scheme and, therefore, that the district court should have grouped the offenses. His argument focuses on the fact that only one criminal episode occurred—police officers found only one weapon that belonged to Mr. Bruder.

As the district court noted, Mr. Bruder's offenses were of the "so-called victimless" variety. Application Note 2 to guidelines § 3D1.2. Therefore, the grouping decision is based upon the nature of the interest invaded by each offense. *Id.* The government, as did the district court, relies primarily on *United States v. Pope*, 871 F.2d 506 (5th Cir.1989), to support its conclusion that Mr. Bruder's offenses should not be grouped. In *Pope*, the Fifth Circuit held that the defendant's two offenses—possession of an unregistered silencer and the unlawful possession of a pistol by a convicted felon—should not be grouped. The court reasoned that these offenses involved different societal interests. The court noted that, in addition to the fact that a silencer is different from a firearm in its very nature, "[t]he thrust of this offense differs widely from an unregistered firearm offense that has nothing to do with the prior criminal record of the offender." *Id.* at 510; *see also United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir.1990) (refusing to group charges of possession of pistol and possession of silencer because different societal interests involved), *cert. denied*, — U.S. —, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991).

The government contends that, in enacting 26 U.S.C. § 5861, Congress intended to protect society from "original and converted military type weapons and, also, the do-it-yourself type of weapons of crime, violence, and destruction." *United States v. Ragusa*, 664 F.2d 696, 699 (8th Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982). Therefore, the crucial element of the offense under section 5681 is clearly the *nature* of the weapon.

By contrast, the crucial element of an offense under 18 U.S.C. § 922(g)(1) is the *criminal record* of the possessor of the firearm. *See Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 114, 103 S.Ct. 986, 992, 74 L.Ed.2d 845 (1983) (goal of section 922(g) is to prevent ownership of firearms by "unreliable" persons). Because these two statutes are aimed at two distinct societal interests, argues the government, the offenses should not be grouped.

Yet we believe significant factors counsel in favor of grouping Mr. Bruder's offenses in this case. Certain offenses specifically are included or excluded from the grouping analysis. *See* U.S.S.G. § 3D1.2(d). The firearm offenses for which Mr. Bruder was convicted are not among such listed offenses. The guidelines indicate that, for crimes neither included nor excluded, a case-by-case determination must be made according to the facts of the case and the applicable guidelines. *Id.* Although none of the examples included in the guidelines provides much assistance in solving this thorny problem, we must keep in mind the guidelines' directive that some counts "are so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range." U.S.S.G. Ch. 3, Part D, Introductory Commentary.

■ We believe that the offenses committed by Mr. Bruder indeed "are so closely intertwined" as to require grouping for sentencing purposes. Under section 922(g), felons are prohibited from possessing or registering firearms. Section 5861 makes it illegal for any person to possess a firearm that is not registered to him. Therefore, whenever a felon possesses a shotgun, he will always violate sections 922(g) and 5861. Moreover, grouping Mr. Bruder's offenses does not flout the guidelines' directive that the grouping decision for "victimless" crimes should be based upon the nature of the interest invaded by each offense. *See* Application Note 2 to U.S.S.G. § 3D1.2. As we have already noted, the government characterizes the interests invaded by Mr. Bruder's offenses as distinct (society's interest in keeping weap-

ons from unreliable persons and society's interest in carefully monitoring the whereabouts of certain dangerous weapons). Nevertheless, it is important to note that the guidelines' commentary is written in terms of interests *invaded* —not in terms of the particular means that the legislature has taken to avoid that invasion. The guidelines state that "counts involving *substantially* the same harm" should be grouped. *Id.* (emphasis supplied). Both statutes at issue here are aimed at protecting society from the indiscriminate availability of firearms. Each statutory provision provides an alternate means to achieve that end. Everyone violates the law by possessing unregistered dangerous weapons; felons do so by having any weapon, including an unregistered dangerous weapon. In short, the interests invaded by these two offenses are not meaningfully different.

■ The guidelines require grouping when the counts involve the same victim and the same act or transaction. *See* § 3D1.2(a). The application notes make it clear that, in applying this subsection, we ought not read the term "victim" as applying to indirect and secondary victims. In the same Application Note, the Sentencing Commission further explains that, *generally*, there will be one person who is directly and most seriously affected by the offense

and therefore ought to be considered the victim. However, immediately afterward in the same Application Note, the Commission acknowledges that a court is bound to encounter ambiguities in the application of this general rule and that such ambiguities should be resolved by grouping counts involving substantially the same harm. The Commission also acknowledges in the same Application Note that one of ambiguities is so-called "victimless crimes." Here, the Application Note continues, the court ought to consider society the victim and base the grouping decision on the nature of the interest invaded. In short, when the guidelines and the application notes are read in their totality, it is clear that the Commission desired consistency between the treatment of victimless crimes and other crimes and viewed a focus on the harm produced by the offenses at issue to be the key to maintaining that consistency.[2]

Moreover, an analysis of the facts of the case, as mandated by section 3D1.2(d), provides an additional reason to group the offenses. Mr. Bruder, unlike the defendant in *Pope*, possessed *one* weapon. Because felons cannot register firearms, he necessarily violated the registration statute as well as the felon in possession statute. The harm to society was unitary—one felon had one firearm.[3] Accordingly, these offenses should have been grouped for the

**2.** Consequently, in dealing with the ambiguities of victimless crimes, we can profit by the Commission's examples of when grouping ought to take place with respect to crimes in which there is a victim. For instance, Application Note 3 recites that assaulting the victim during the course of a kidnapping and the kidnapping itself are counts that ought to be grouped together. Unless the losses from particular victimless crimes are *more* dissimilar than kidnapping, the offenses ought to be grouped.

**3.** The Fifth Circuit's decision in *United States v. Pope*, 871 F.2d 506 (5th Cir.1989), is distinguishable. The guidelines require a case-by-case determination of grouping decisions and counsel that the grouping rules "seek to provide incremental punishment for significant additional criminal conduct." U.S.S.G. Ch. 3, Part D, Introductory Commentary. In *Pope*, the defendant possessed two dangerous instruments—a pistol and a silencer. The *Pope* court found that these two weapons involved different societal interests and therefore merited incremental punishment as additional criminal conduct. Al-

though the court did not explicitly so state, the reasoning of *Pope* appears to have depended upon the existence of two weapons. *See id.* at 510 (silencer and pistol "are two different instruments of danger to the community and need to be treated differently"). Indeed, the *Pope* court's analysis focused exclusively on whether grouping was appropriate under section 3D1.2(d) (requiring counts to be grouped "if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm"). The Second Circuit's decision in *United States v. Bakhtiari*, 913 F.2d 1053 (2d Cir.1990), is distinguishable on the same basis. Two separate weapons were at issue there. Mr. Bruder, however, possessed only one weapon. If Mr. Bruder's offenses are not grouped, his one act of criminal conduct (possession of a shotgun) would give rise to punishment for two offenses, despite the guidelines' stated goal of seeking incremental punishment only for "significant additional criminal *conduct.*"

purpose of computing the applicable guideline range.

### 2. Departure

■ During the time between the offense and sentencing, Mr. Bruder was incarcerated for about nine months in a community based correction facility. Correction officers testified that during this time, Mr. Bruder had obtained employment, changed his associates, improved his living situation, and reduced his alcohol consumption. They also testified that they did not believe Mr. Bruder would commit additional offenses as long as he remained employed. *See* Appellee's Br. at 12.

Mr. Bruder argues that the district court mistakenly believed that it could not depart from the guidelines on the basis of his rehabilitation because the court already had given him a two-level reduction for acceptance of responsibility.[4] He suggests that the district court found mitigating circumstances present that were not considered by the guidelines, but determined that it could not further reduce his sentence.

Under 18 U.S.C. § 3553(b),

The court shall impose a sentence of the kind and within the range [established by the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

This provision clearly provides that no departure is permitted on the basis of circumstances adequately taken into consideration by the Sentencing Commission. *See United States v. Uca,* 867 F.2d 783, 786 (3d Cir.1989). Sentencing judges "are not free to reject the Guidelines out of hand, nor are they at liberty to impose personalized sentencing agendas." *United States v. Thomas,* 906 F.2d 323, 329 (7th Cir.1990).

Section 3E1.1 of the guidelines provides for a two-level reduction of the offense level for acceptance of responsibility. The commentary to section 3E1.1 gives a list of examples that may indicate a defendant's acceptance of responsibility.[5] The Back-

---

The Third Circuit's decision in *United States v. Riviere,* 924 F.2d 1289, 1303–06 (3rd Cir.1991), supports our conclusion. In *Riviere,* the district court had not grouped several firearm offenses. The Third Circuit determined, however, that one of the offenses stemmed from the defendant's *"status* as a felon rather than his *conduct." Id.* at 1305 (emphasis in original). Since the guidelines provide that sentences should be enhanced only for additional conduct, the court held that "the policies underlying the multiple count provision [of the guidelines] support the interpretation that, because the offenses affect the same victim, society, the court should group them." *Id.*

4. This court has held that a decision not to depart from the guidelines is reviewable on appeal if this decision "is the product of a conclusion that the judge lacks authority to depart." *United States v. Poff,* 926 F.2d 588, 591 (7th Cir.1991) (en banc); *see also United States v. Prescott,* 920 F.2d 139 (2d Cir.1990); *United States v. Chotas,* 913 F.2d 897, 899 (11th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991); *United States v. Bayerle,* 898 F.2d 28, 31 (4th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990); *United States v. Cheape,* 889 F.2d 477, 480–81 (3d Cir. 1989); *United States v. Russell,* 870 F.2d 18, 20–21 (1st Cir.1989); *cf. United States v. Franz,* 886 F.2d 973 (7th Cir.1989) (no appellate jurisdic-

tion to consider discretionary refusal to depart from guidelines). Mr. Bruder argues that the district court refused to depart because it believed that the guidelines did not permit such a departure. Therefore, we have jurisdiction to consider this appeal of the district court's decision not to depart.

5. Application Note 1 to section 3E1.1 of the guidelines provides:

In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to the following:
(a) voluntary termination or withdrawal from criminal conduct or associations;
(b) voluntary payment of restitution prior to adjudication of guilt;
(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;
(d) voluntary surrender to authorities promptly after commission of the offense;
(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
(f) voluntary resignation from the office or position held during the commission of the offense;
(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

ground Commentary states that, in addition to the listed factors, "some equivalent action" may also demonstrate acceptance of responsibility.[6]

In *United States v. Van Dyke*, 895 F.2d 984, 987 (4th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990), the Fourth Circuit concluded that the defendant's rehabilitative conduct was "equivalent" to acceptance of responsibility. Because the defendant's conduct effectively had been taken into consideration by the guidelines, the court held that the defendant's conduct could not serve as a basis for departure from the guidelines. *See also United States v. Williams*, 891 F.2d 962, 966 (1st Cir.1989) (defendant's desire to reform adequately considered in guidelines and not basis for departure).

We agree with the district court that Mr. Bruder's post-offense rehabilitation demonstrates that he has accepted responsibility for his criminal actions. Under the facts of this case, the district court correctly held that Mr. Bruder's conduct was "equivalent" to acceptance of responsibility. Accordingly, the district court properly refused to depart from the sentence required under the guidelines.

### Conclusion

For the reasons stated above, the judgment of the district court is affirmed in part and reversed in part and remanded for sentencing.

REVERSED IN PART AND REMANDED FOR SENTENCING.

FLAUM, Circuit Judge, with whom WOOD, Jr., COFFEY, MANION and KANNE, Circuit Judges, join, dissenting.

Judge Ripple ably sets forth the argument for grouping the offenses for which the jury convicted Arthur Bruder. My reading of § 3D1.2, however, convinces me that the guidelines do not permit the grouping of these offenses, and I respectfully dissent.

Section 3D1.2 provides for grouping of counts that involve "substantially the same harm." The guideline does not leave it to the courts to determine when counts involve substantially the same harm; rather, it sets forth in subsections (a) through (d) the "circumstances in which counts are to be grouped...." Application Note 1. The Note does not go on to say "or whenever a court determines that the offenses involve substantially the same harm." I therefore read this instruction to say that offenses not described by those subsections should *not* be grouped.

The majority seemingly rejects the categorical approach to grouping adopted by the guidelines in favor of a "case-by-case determination" about grouping for offenses not listed in § 3D1.2. That approach, I believe, requires an inquiry that is not bounded by the parameters established by the Sentencing Commission in subsections (a) through (d). As I read it, section 3D1.2 directs a "case-by-case inquiry" only for the purpose of determining whether the grouping rationale of subsection (d) suggests that nonlisted offenses should be grouped:

> For multiple counts of offenses that are not listed, grouping *under this subsection* may or may not be appropriate; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level.

§ 3D1.2(d). This instruction follows a list of offenses for which grouping under subsection (d) is explicitly authorized and one containing offenses for which that subsection forbids grouping. In my view, it mandates a case specific inquiry only to deter-

---

**6.** The Background Commentary to section 3E1.1 states:

> The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of responsibility for the offense and related conduct by taking, in a timely fashion, one or more of the actions listed above (*or some equivalent action*) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility. [Emphasis supplied].

mine whether the rationale of subsection (d) supports grouping, not an inquiry to determine whether there exists *any* rationale for grouping. The inquiry envisioned by subsection (d), then, is no different than that necessary to determine whether grouping is appropriate under any of the other subsections—the courts must simply determine whether the rationales of subsections (a) through (d) support grouping. The commission had to spell this point out in the context of subsection (d) simply because that subsection *further restricts* our discretion to decide when grouping is appropriate by including a list of specific offenses that cannot be grouped. By lifting the "case-by-case" language of subsection (d) from its subsection moorings, the majority renders those subsections essentially meaningless. Those subsections cabin our discretion to determine when counts involve "substantially the same harm," and should be the framework upon which we analyze Bruder's argument.

None of the subsections appear to apply. Application Note 2 says that subsections (a) and (b) do not cover these offenses because they are "victimless" crimes; "the term 'victim' is not intended to include indirect or secondary victims" such as the general public. The note goes on to explain that the grouping decision for victimless crimes must be based, instead, on "the nature of the interest invaded by each offense," that is, on whether the counts involve "substantially the same harm." Since subsections (a) through (d) comprise those cases involving "substantially the same harm," the application note does no more than refer the reader back to the remaining subsections of the guideline. The majority suggests that the application note evinces a desire that courts treat victimless crimes in the same fashion they treat crimes with an identifiable victim, but in view of the Commission's evident desire to *distinguish* the treatment of victimless crimes, I don't believe we can attribute that desire to the Sentencing Commission.

Subsection (c), by its terms, does not apply to the offenses we are considering. The applicable guideline for both offenses in question is § 2K2.1(b) (*see* Statutory In-

dex at A.5 and A.10), and reference to that guideline demonstrates that neither of the firearms offenses constitutes a specific offense characteristic of the other to bring it within the ambit of subsection (c). Subsection (d), which does apply to "most" firearms offenses (*see* Application Note 5), does *not* apply to firearms offenses for which the applicable guideline is § 2K2.1 because that guideline does not adjust the offense level on the basis of the quantity of weapons possessed. There is no "measure of aggregate harm," § 3D1.2(d), and therefore no basis for grouping these offenses under subsection (d). *Compare* § 2K2.2(b)(1), under which grouping *is* required (*see* § 3D1.2(d)).

The majority's position is not without appeal. I am uncomfortable, however, adopting an approach to the guidelines that sacrifices text to policy judgment. As none of the subsections to § 3D1.2 authorizes grouping the offenses at issue in this case, I must respectfully dissent from the majority's judgment that such grouping is somehow consistent with that section.