983 F.2d 1074
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tyler YU, Defendant-Appellant.
 No. 92-1538.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 1, 1992.*
Decided Dec. 28, 1992.
 
 Before FLAUM, MANION and KANNE, Circuit Judges.
 ORDER
 Tyler Yu is currently serving a term of eighteen months' imprisonment for conspiracy to distribute cocaine. He appeals from the district court's enhancement of his sentence for obstruction of justice pursuant to § 3C1.1 of the United States Sentencing Guidelines. We affirm.
 
 I.
 
 1
 While attending Bradley University in Peoria, Illinois, Yu met Ed Puterbaugh. The two became roommates and lived together for four years. In October 1990, Yu supplied Puterbaugh with one-half ounce of cocaine which Puterbaugh sold to a government informant. The next month Puterbaugh sold another half-ounce of cocaine to the same agent after receiving the drugs from Yu. After completing both sales, Puterbaugh turned over the proceeds to Yu. Earlier that same fall, Yu had given Heather Argo one-quarter ounce of cocaine. She had sold the drugs to a government informant as well.
 
 
 2
 A federal grand jury indicted all three individuals on four counts of conspiracy to distribute cocaine. Puterbaugh and Argo also were indicted for distribution of cocaine. After Puterbaugh pleaded guilty, he informed a United States Probation Officer that Yu had threatened to harm him. The government filed a motion to revoke Yu's bond.
 
 
 3
 At a subsequent hearing, Puterbaugh testified that he and Yu were arrested on April 1, 1991. Soon after the arrest, Yu's parents gave Puterbaugh $5,000 to hire a lawyer. At Rocky's tavern later that month, both men were out drinking with two friends when Yu told Puterbaugh, "You know I can have you taken out." Although Puterbaugh continued to live with Yu after that evening, he said at the hearing that he understood these words to mean that Yu could have him killed. Yu denied making the "take you out" statement. On the witness stand, he recalled telling Puterbaugh that "some of the people I associate with are dangerous, but I never said I would have anything to do with it." R. 55 at 16.
 
 
 4
 Yu testified that between April and May 1991, he and Puterbaugh continued to live under the same roof, socialize with one another, go out drinking together, and see each other on a daily basis. No fights or arguments occurred. On two occasions in May, Yu repeatedly called Puterbaugh a "narc", or someone who turns in another person by cooperating with the government. On the stand, Yu admitted he had used the term "narc" when he was intoxicated. On one of those occasions, Yu referred to the money his parents had given Puterbaugh, telling him that "If you roll, you owe." Id. at 6. If Puterbaugh "were to turn against me," Yu explained, "my parents would definitely want that money back...." Id. at 18.
 
 
 5
 During cross-examination, Puterbaugh testified that he had roomed with Yu for four years, during which time Yu had never threatened him or carried a gun. At the time when Yu made the statements in question, Puterbaugh had not formally entered into a plea agreement with the government. In fact, he did not tell Yu of his decision to cooperate with the government until May 28, 1991, after Yu had threatened him. Puterbaugh moved out after that date, and he and Yu had no contact thereafter.
 
 
 6
 The district court determined that Yu's remarks to Puterbaugh showed that he was attempting to intimidate a witness. Finding that it was not particularly relevant that the conversations had taken place before Puterbaugh entered into an agreement with the government, the court said
 
 
 7
 it's clear to me from the evidence presented ... that Mr. Yu saw Mr. Puterbaugh as a witness in this case and he was, according to the evidence presented ..., attempting to intimidate him in terms of what that testimony would be, in other words to dissuade him from being a witness for the Government.
 
 
 8
 R. 55, at 34. The district court judge revoked Yu's bond and ordered him detained. Yu later pleaded guilty to one count of conspiracy to distribute cocaine, a violation of 21 U.S.C. § 846.
 
 
 9
 At sentencing, the court found that the government had met its burden of establishing by a preponderance of the evidence that Yu should be sentenced pursuant to the Sentencing Guidelines' obstruction of justice enhancement, which states: "If the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." United States Sentencing Commission, Guidelines Manual (Guidelines) § 3C1.1 (Nov. 1991). Yu objected to the two-level enhancement, which increased his offense level to fourteen. A criminal history category of II combined with that offense level resulted in an imprisonment range of eighteen to twenty-four months.
 
 II.
 
 10
 Our review of sentences imposed under the Sentencing Guidelines is governed by 18 U.S.C. §§ 3742(e) and (f). These sections require courts to review a variety of factors, including whether a sentence either was imposed in violation of the law or resulted from an incorrect application of the Guidelines. United States v. Bruder, 945 F.2d 167, 169 (7th Cir.1991). We review such questions of law de novo. United States v. Bigelow, 914 F.2d 966, 973 (7th Cir.1990), cert. denied, 111 S.Ct. 1077 (1991). Section 3742(e) also requires a reviewing court to sustain the trial court's factual findings and credibility judgments unless the district court judge clearly has erred. Bruder, 945 F.2d at 169; United States v. White, 903 F.2d 457 at 461 (7th Cir.1990).
 
 
 11
 A criminal defendant who intimidates or harasses a witness may have his sentence adjusted upwardly for obstructing justice. United States v. Cooper, 942 F.2d 1200, 1208-09 (7th Cir.1991), cert. denied, 112 S.Ct. 1303 (1992). See also Application Note 3(a) in the Commentary to § 3C1.1. Yu's statements, particularly the threat that he could have Puterbaugh taken out, qualify him for sentence enhancement. While Puterbaugh continued to live with and socialize with Yu after Yu made the intimidating remarks, the fact remains that Yu threatened Puterbaugh. Section 3C1.1 contains no provision excepting circumstances in which people remain roommates, or even friends for that matter, after intimidating or attempting to intimidate a witness. Although Yu denied making the most egregiously threatening comment, the district court judge had the opportunity to observe the witnesses and determine their credibility first-hand. We find nothing erroneous, let alone clearly so, with the district court's factual findings. For that reason, and because the district court correctly applied the Guidelines, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record