**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Warren J. JACKSON, Defendant–Appellant.**

**No. 91–2969.**

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1992.

Decided Sept. 3, 1992.

**58**

John W. Vaudreuil, Asst. U.S. Atty., Madison, Wis. (argued), for plaintiff-appellee.

Margaret Danielson, Madison, Wis. (argued), for defendant-appellant.

Before BAUER, Chief Judge, MANION, Circuit Judge, and GIBSON, Senior Circuit Judge.[*]

BAUER, Chief Judge.

On May 30, 1991, a jury sitting in the Western District of Wisconsin found defendant-appellant Warren Jackson guilty of conspiring to possess cocaine with the intent to distribute and conspiring to distribute cocaine. The jury found Jackson not guilty of three other cocaine-related charges.

In preparation for sentencing, the United States Probation Office prepared a pre-sentence report ("PSI") dated July 1, 1991. In the PSI, the probation office recommended a two-level enhancement under the Sentencing Guidelines for Jackson's obstruction of justice, and another two-level increase for his supervisory role in the offense. The probation office recommended these enhancements because (1) Jackson concealed his post-indictment arrest and

subsequent state court charge for heroin possession, and (2) Jackson organized the cocaine distribution conspiracy.

Although Jackson filed various objections to the PSI, he did not challenge the probation office's two recommended enhancements. On the contrary, the major thrust of the defendant's objections to the PSI centered upon the amount of cocaine involved in the conspiracy. When the district court concluded that there was insufficient evidence to maintain that Jackson conspired to possess with the intent to distribute more than 3.5 kilograms of cocaine—the probation office suggested that Jackson's conduct involved 25.4 kilograms—defense counsel stated, "I have nothing further to say then." Transcript of Sentencing Hearing, R. Doc. 95 ("Sentencing Trans.") at 53–54.

The district court calculated a base offense level of 30. It added the four additional levels due to the two recommended enhancements. Thus, Jackson's total offense level was 34 which, coupled with a Criminal History Category II, resulted in a sentencing range of 168–210 months. The court imposed a sentence of 180 months imprisonment to be followed by a five-year term of supervised release. Jackson appealed.

On appeal, Jackson makes two claims: that the evidence was insufficient to sustain his conviction and that the district court erred by accepting the probation office's recommendations that he receive a two-level increase for obstruction of justice and a two-level increase for his role in the offense. Neither claim has merit. We reject each in turn.

■ Jackson first argues that the evidence against him was insufficient to sustain his conviction because it was composed almost entirely of the hearsay statements of co-conspirators. *See* Defendant's Brief at 11. Jackson acknowledges, however, that out-of-court statements of co-conspirators may be used to establish a conspiracy

---

[*] The Honorable Floyd R. Gibson, Senior Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

and, in conjunction with other evidence, establish a defendant's participation in the conspiracy. *See id. See also United States v. Thompson,* 944 F.2d 1331, 1341 (7th Cir.1991) ("Co-conspirator testimony about the words and deeds of a defendant are not hearsay; the words and deeds of the defendant, while themselves out-of-court statements, are admissions, and because the testimony is offered in court, the statements of the co-conspirator are not hearsay either."). In *United States v. Durrive,* 902 F.2d 1221 (7th Cir.1990), we declared,

> We are persuaded that when a criminal defendant raises a sufficiency of the evidence challenge to a conviction, including any conspiracy conviction, the correct standard of review is substantial evidence. Of course, we will continue to view the evidence in the light most favorable to the government and accept circumstantial evidence as support, even sole support, for a conviction.

*Id.* at 1229.

Jackson, then, has an uphill climb in this appeal: we will overturn a verdict only when the record is "devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *Id.* at 1225. *See also United States v. Reiswitz,* 941 F.2d 488, 495 (7th Cir.1991) ("Our job on appeal is to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (quotations omitted)).

■ There is no doubt about the elements of Jackson's crimes: a conspiracy is a confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act. *United States v. Aguilar,* 948 F.2d 392, 395 (7th Cir.1991). To obtain a conspiracy conviction, the government must prove that the defendant (1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme. *Id.* In the instant case, the evidence adduced at trial was more than sufficient to sustain Jackson's conspiracy conviction.

In *Thompson,* we chose not to answer the question whether a conspiracy conviction based *solely* on out-of-court statements of co-conspirators should be sustained on appeal. *See Thompson,* 944 F.2d at 1341. *See also United States v. Martinez de Ortiz,* 907 F.2d 629, 632 (7th Cir. 1990) (en banc). We found it unnecessary to resolve that dilemma because there was significant evidence to corroborate the out-of-court co-conspirator statements introduced against the defendant. The same can be said in the instant case. Indeed, the corroborating evidence in the instant case exceeds the level of corroboration found sufficient in *Thompson.* A brief review of the evidence demonstrates our conclusion.

■ Jackson's conspiracy charge in the indictment originally named William M. Miller and Marc L. Cayle as co-conspirators. Prior to trial, the charges against Cayle were dismissed. In addition, at the time of Jackson's trial, Miller, who is Cayle's cousin, was a fugitive. The government's proof focused on the time period from late 1987 through October 1988. Throughout most of that time, Cayle was a student at the University of Wisconsin in Madison. At a fraternity house at the University, Miller introduced Jackson, to whom Miller referred as "Squeak," to Cayle. Cayle soon began assisting Miller and Jackson in the distribution of cocaine. Cayle introduced his friends and associates to Miller who soon became Miller's customers. In connection with these sales of cocaine, Miller used Cayle's telephone and, as a result, paid the telephone bills. At one point, Cayle's bill was sent directly to Miller at the Presidential Towers apartment complex in Chicago.

At trial, both indicted and unindicted co-conspirators offered Miller's out-of-court statements. For instance, Cayle testified that Miller told him that Jackson was his (Miller's) source for cocaine. *See* Transcript of Proceeding at Trial ("Trial Trans.") at 1–B–17. Brigham Miller, a cocaine purchaser, also testified that Bill Miller stated that "Squeak" was his cocaine source. *See id.* at 1–A–31. Two other cocaine purchasers, Kevin Camnitz and

William Webb, testified that Miller's narcotic activities were connected to "Squeak" Jackson.

These out-of-court statements implicating Jackson as Miller's cocaine supplier were corroborated by other evidence. Cayle's independent observations, for instance, provide significant support. Cayle testified that he saw Miller and Jackson arrive together at the Madison airport from Chicago. Jackson and Miller immediately went into a bathroom. Moments later, Jackson emerged from the bathroom and got back on a plane to Chicago. Miller came out of the bathroom, met Cayle, and the two of them walked to Cayle's car. Miller then showed Cayle two small bags of cocaine. These observations support Miller's out-of-court statement that Jackson was Miller's cocaine source. Cayle believed that Jackson had transferred the cocaine to Miller in the bathroom.

Cayle also testified that he observed Jackson in the Presidential Towers apartment (the same apartment where Cayle's phone bill had been sent) counting stacks of money. In addition, both Jackson and Miller told Cayle that Jackson's nickname was "Squeak." Jackson and Miller also told another trial witness, Michael Budwick, that Jackson's name of choice was "Squeak." Budwick entered Jackson's pager number next to the name "Squeak" in his address book. Moreover, witness William Webb testified that he made several trips to Chicago with Miller in order to obtain cocaine. On one trip Webb observed the person identified as "Squeak" in a white Corvette. Webb observed cocaine passed from the white Corvette into Miller's car. *See* Trial Trans. at 2–A–13. Jackson and Miller were arrested in a white Corvette.

These bits of corroboration are only a part of a larger collection of evidence supporting the out-of-court statements indicating that Warren "Squeak" Jackson supplied William Miller with cocaine. The other evidence includes telephone records showing numerous calls between the phone Miller used and Jackson's pager, the large amounts of cash found on the defendant when he was arrested, and an electronic scale discovered in the white Corvette. Viewing all this evidence, with reasonable inferences, in the light most favorable to the government, we hold that a rational juror clearly could have found Warren Jackson guilty of conspiring to distribute cocaine. There is sufficient evidence, then, to sustain Jackson's conviction.

■ Jackson's remaining claim—that the district court erred by giving him two-level increases for the obstruction of justice and for his role in the offense—merits less attention. Jackson argues that the facts in the PSI are insufficient to support the Sentencing Guidelines enhancements. As we noted earlier, Jackson failed to object to the recommended enhancements in the district court. The district court provided Jackson ample opportunity to challenge the probation office's recommendations both prior to and during the sentencing hearing. "It is well-established that ... a failure to raise an issue before the district court results in a waiver of that issue on appeal." *United States v. Livingston*, 936 F.2d 333, 335 (7th Cir.1991) (quotations omitted).

■ Given Jackson's waiver, we review the district court's decision to enhance Jackson's sentence for plain error. *Id.* at 336. We note that plain error "must be of such a great magnitude that it probably changed the outcome of the trial." *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987). We reverse for plain error "only when [we are] convinced that it is necessary to avert an actual miscarriage of justice." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984).

In *Durrive*, we determined that

[w]e must affirm the sentence imposed by the district court unless it was imposed in violation of law or as a result of an incorrect application of the sentencing guidelines.... [The Guidelines] require that we give due regard to the district court's credibility determinations, accept the sentencing court's finding of fact unless they are clearly erroneous, and give due deference to the district court's application of the Guidelines to the facts.

*Durrive,* 902 F.2d at 1230 (quotations omitted). Clear error exists when, even though there may be evidence to support the decision, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. D'Antoni,* 856 F.2d 975, 978 (7th Cir.1988).

Section 3C1.1 of the Sentencing Guidelines provides for a two-level increase in the offense level if the defendant willfully attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing in the case. Application Note 3 to section 3C1.1 states that this enhancement applies to a defendant who provides materially false information to either the court or the probation officer investigating the case.

The facts of the instant case demonstrate that it was not clear error for the district court to find that Jackson obstructed justice. After his arrest, Jackson was released on bond. The conditions of his release included the requirement that he report to the probation office all contact with law enforcement officers regarding criminal matters within twenty-four hours. *See* R. Doc. 10, Order Specifying Method and Conditions of Release at 2. When the court held a hearing to consider revoking Jackson's bail because he had tested positive for morphine use, the defendant made no mention that he recently had been arrested by Chicago Police for heroin possession. The probation office was not aware of this arrest until a Chicago Police officer contacted the United States Attorney's Office. It was well within the discretion of the district court to consider Jackson's violation of his bail conditions as an attempt to obstruct justice. Surely it is material to the magistrate judge and the probation office to know that the defendant had been arrested and charged with possessing heroin. The district court's decision to increase Jackson's offense level for this obstruction of justice was not clear error.

Nor was it error for the court to enhance Jackson's offense level for his role in the conspiracy. Section 3B1.1(c) provides for a two-level increase if the defendant was an organizer, leader, manager, or supervisor

of any criminal activity. Our brief summary of the evidence reveals that Jackson occupied a leading role in the cocaine distribution conspiracy. In the narcotic-selling network that included Marc Cayle, Brigham Miller, William Webb, William Miller, and assorted others, Warren "Squeak" Jackson was the ultimate supplier, the Big Cheese. After all, Jackson was the one seen counting stacks of money in the apartment at Presidential Towers. Given these facts, the district court properly applied a two-level enhancement to Jackson's offense level.

For the foregoing reasons, Jackson's conviction and sentence are

AFFIRMED.