**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesus ROSALEZ–CORTEZ,
Defendant–Appellant.**

No. 93–1239.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1993.

Decided March 24, 1994.

**1212**

Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Eddie A. Stephens (argued), Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Robert L. Edwards, Phillip J. Zisook (argued), Deutsch, Levy & Engel, Chicago, IL, for defendant-appellant.

Before BAUER and RIPPLE, Circuit Judges, and REYNOLDS, District Judge.[*]

RIPPLE, Circuit Judge.

Jesus Rosalez–Cortez ("Rosalez") and Augustin Ortega–Vargas ("Ortega") were charged in a two-count indictment with conspiracy to possess with intent to distribute approximately two kilograms of mixtures containing cocaine in violation of 21 U.S.C. § 846(a)(1), and attempt to possess with in-

---

[*] The Honorable John W. Reynolds of the United States District Court, Eastern District of Wisconsin, is sitting by designation.

tent to distribute that amount in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Following a two-day bench trial, Mr. Rosalez was found guilty of both counts of the indictment. On the day judgment was entered against Mr. Rosalez, Ortega entered a change of plea to guilty on both counts. Both defendants were sentenced on January 15, 1993. Mr. Rosalez' sentence was a concurrent term of 63 months of imprisonment and four years of supervised release on each count. Ortega received the same sentence. Mr. Rosalez appeals his conviction and sentence. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

A. *Facts*

The Loma Linda Bar in Chicago was the meeting place for Mr. Rosalez, Ortega and Jose Varela, a confidential informant. When they first met on March 23, 1992, their conversation soon turned to selling cocaine to Varela. Mr. Rosalez was present as Ortega explained to Varela that he was expecting 25 kilos from Mexico. When Mr. Rosalez and Ortega met with Varela at the bar on three later occasions during the next week or so, Ortega told Varela that he had not yet received the cocaine from Mexico.

On June 5, 1992, Mr. Rosalez came to Varela's house on his own and asked Varela if he had any "paloma." (Varela testified that "paloma" means cocaine.[1] Tr. I at 21.) When Varela said he did have cocaine to sell, Mr. Rosalez responded, "right now, we need some." He also told Varela that Ortega was on his way over to talk about it. When Ortega arrived, he discussed buying cocaine from Varela while Mr. Rosalez listened. Ortega offered to buy one kilogram immediately. However, when Varela informed them that one kilogram would cost $30,000 but two would cost $27,000 each, Ortega told Mr. Rosalez, "Look, it's better for us to buy two, because then we will get a better price."

Ortega also commented to Mr. Rosalez that there was enough money in a safety deposit box to purchase two kilograms. After Ortega and Varela exchanged pager numbers, Ortega and Mr. Rosalez left together.

Later that evening Ortega called Varela from Mr. Rosalez' house; he agreed to meet Varela the next morning at the Omni Store in Melrose Park to buy two kilos, or "two spares," as he called them. Tr. I at 37. Early on the morning of June 6, 1992, Ortega again called Varela; he confirmed his agreement to bring $54,000 for two "deuces," but changed the time from 10 to 11 a.m.

Varela and DEA Agent Tovar, who was posing as Varela's cousin and drug partner, drove to the Omni Store shortly before 11 a.m. When Ortega and Mr. Rosalez came out of Omni, Varela walked over to their car with them. Ortega got into the driver's seat; Mr. Rosalez entered the passenger side; Varela stood by the driver's window. Both Ortega and Rosalez acknowledged that they had the money with them. However, when Ortega removed a white plastic bag of money from a hiding place in the back door of the car to show to Varela, Mr. Rosalez advised him to put another bag around it because the money was visible through the bag. Mr. Rosalez then picked up a brown plastic bag and held it open while Ortega placed the white plastic bag of money inside it. Once he saw the money, Varela told his "cousin/partner" Tovar; then Ortega, carrying the money bag, and Mr. Rosalez accompanied Varela to Agent Tovar's car. Mr. Rosalez never questioned what was happening. He and Ortega got into the back seat of the car, and Varela sat in the front. "Cousin" Tovar asked to see the money and counted it in the presence of both men. When Ortega explained that the money was packaged "in fives," i.e., $5,000 bundles, Mr. Rosalez nodded in agreement. Mr. Rosalez also nodded when Ortega suggested that they drive to his car to transfer the cocaine into it.

As they drove across the parking lot to Ortega's car, Tovar asked the men about the

like a dove. Well, it means the cocaine." Tr. I at 64. No objection was raised to that "street definition" of the word "paloma."

possibility of future cocaine deals on a regular basis. Ortega said that things were presently "out of control," but that he would call later. Mr. Rosalez also said he would talk to him later. When Ortega and Mr. Rosalez got out of Tovar's car they were arrested.

After being advised in Spanish of his constitutional rights, Mr. Rosalez voluntarily stated that he knew his friend Ortega sold cocaine "here and there." Mr. Rosalez explained to the authorities that, on June 6, Ortega had simply asked him to go to a store; in the Omni Store Ortega had said he was waiting to conduct a deal, but had not indicated that it was going to be a drug deal. He said that he did not know Ortega had a large sum of money, and did not see any money until Ortega opened the money bag inside Agent Tovar's car. Mr. Rosalez also stated that he had been unemployed for a year. However, when he was arrested, Mr. Rosalez was wearing a pager which, according to the records of the Starr Beeper Company (the company that had leased a pager to Ortega as well), had been leased by Mr. Rosalez for six months with advance payment.

The evidence at trial included telephone records confirming calls from Mr. Rosalez' residence to both Varela's and Ortega's residences on the evening of June 5, 1992. In addition, a phone call was made at 7:48 a.m. on June 6, 1992 from Mr. Rosalez' home to Varela's residence.

## B. District Court Decision

Following the conclusion of evidence and of closing arguments, the court found Mr. Rosalez guilty of both counts. In an oral ruling from the bench, tr. IV at 208–09, and later in its denial of Mr. Rosalez' subsequent motion for judgment of acquittal or new trial, R. 42, the court explained that an important fact in its consideration was Mr. Rosalez' decision to leave Ortega's car and go to another automobile to exchange the money for cocaine. The uncontroverted evidence of Mr. Rosalez' many conversations with Varela about the sale of drugs and his appearance and partic-

ipation at the scene of the proposed drug transaction were also substantial factors in its decision.

## C. Sentencing Hearing

At the sentencing hearing on January 15, 1993, while awaiting the interpreter, the district court discussed with the attorneys the possible sentence ranges of Ortega, who by pleading guilty might qualify for a two-point reduction for acceptance of responsibility, and of Mr. Rosalez, who by pleading not guilty might not get the same reduction. The court further commented that, if Mr. Rosalez were to stand before the court and to admit criminal responsibility for what he had done, "perhaps the findings would be there for [the court] to give a two-point reduction."

When the interpreter arrived and the sentencing hearing commenced, Mr. Rosalez did in fact express some remorse: He admitted making a phone call,[2] but stated that he did not know it was a crime, and would not do it again. After the court asked him to admit that he should have left the scene of the crime when he knew what was happening, he responded that it was too late to leave because he was already there. The court also asked him directly whether he regretted that he participated, and he answered "yes," but had nothing more to add.

The district court then sentenced both defendants. Based upon the presentence investigation report, the court initially determined that the base offense level for both Rosalez and Ortega was level 28. Persuaded by defense counsel that "approximately two kilograms" of cocaine could be less than two, the court reduced the base level to 26. The court then granted Ortega a two-point reduction for acceptance of responsibility under the United States Sentencing Guideline § 3E1.1(a) ("U.S.S.G. § 3E1.1(a)"), and determined that Ortega's total offense level was 24 and his criminal history category was I. The court sentenced Ortega to concurrent

2. Mr. Rosalez at times appeared to refer to a telephone call made to Varela, and at other times to a call made to Mr. Ortega as a favor to Varela.

sentences of 63 months of imprisonment and four years of supervised release.

Considering next Mr. Rosalez' sentence, the court heard additional arguments from both counsel on a possible adjustment for acceptance of responsibility. It also engaged in a colloquy with Mr. Rosalez concerning his participation in the attempted drug transaction. Mr. Rosalez again denied knowing it was a crime to participate, and did not accept Varela's account of what transpired. He admitted only to making the phone call and to being on the scene when "it started happening."

The court then explained that the commentary note 2 to § 3E1.1 instructs a court not to grant an acceptance of responsibility reduction to a defendant who went to trial denying his guilt. After expressing regret that it had attempted to elicit statements of remorse from Mr. Rosalez, the court then noted that Mr. Rosalez was neither remorseful nor honest:

> [H]ad he just made that phone call, I will bet he would have never made it into this court. But he went beyond that. He went to the scene. He saw a transaction. He went from one car to another.
>
> And I have probably gone too far in eliciting from him his ability to show remorse for these things. And frankly I just don't see it. . . . So I am not going to give him a two point acceptance of responsibility.

Tr. V at 57–58.

The court then determined that Mr. Rosalez' sentencing level was 26 and that the guideline range for that level is 63 to 78 months. Because Mr. Rosalez had no prior convictions, the court decided to sentence him at the lowest end of that scale, 63 months. Therefore, even though the sentence of each defendant was calculated at different sentencing levels, both received the same length of sentence.

## II

## ANALYSIS

### A. *Sufficiency of the Evidence*

■ A defendant appealing the sufficiency of the evidence proffered by the government at trial has an onerous task, one which we have often described as "shoulder[ing] a heavy burden." *United States v. DePriest*, 6 F.3d 1201, 1206 (7th Cir.1993) (citing *United States v. Holland*, 992 F.2d 687, 689 (7th Cir.1993)). We must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We neither reweigh the evidence presented at trial nor reassess the credibility of the witnesses. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *DePriest*, 6 F.3d at 1206 (citing *United States v. Byerley*, 999 F.2d 231, 234 (7th Cir.1993)). We may overturn a verdict "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir.1992); *see also United States v. Whaley*, 830 F.2d 1469, 1473 (7th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). It is the defendant's task to show this court that there was no evidence from which the trier of fact could have found guilt beyond a reasonable doubt.

### 1. Sufficiency of the evidence of conspiracy

■ To establish that a conspiracy existed between these defendants, the government was required to prove that there was an agreement between Mr. Rosalez and Ortega to commit a crime, namely possession of cocaine with intent to distribute it, and that Mr. Rosalez was a party to that agreement. *United States v. Collins*, 966 F.2d 1214, 1219 (7th Cir.1992); *United States v. Townsend*, 924 F.2d 1385, 1389–90 (7th Cir. 1991). An agreement to conspire is "typically distinguished by cooperative relationships between the parties that facilitate the achievement of the goal." *Townsend*, 924 F.2d at 1395. The government must have demonstrated that Mr. Rosalez "knew of the conspiracy and intended to join and associate

himself with its criminal design and purpose." *United States v. Kozinski*, 16 F.3d 795, 808 (7th Cir.1994).

■ Mr. Rosalez asserts that the evidence proffered by the government at trial was insufficient to support his conspiracy conviction. According to Mr. Rosalez, that evidence indicated that Mr. Rosalez was merely present, and that Ortega, not Mr. Rosalez, negotiated for and transacted the purchase of cocaine. In fact, Mr. Rosalez describes himself as a "nonparticipant" in any overt act on the date of his arrest. Furthermore, Mr. Rosalez claims that his only statements were "How's the paloma?" (and Varela admitted that "paloma" means "dove"), and his agreement to talk to "cousin" Tovar after the drug deal was over. According to Mr. Rosalez, such statements and actions cannot reflect an intent to join a conspiracy.

■ The record contradicts this self-serving portrait of Mr. Rosalez' claimed minimal role in the drug transaction. The evidence clearly reflects the cooperative relationship between Mr. Rosalez and Ortega, and the constant presence of Mr. Rosalez in all of the activities involving the drug relationship. Mr. Rosalez and Ortega together met with Varela at the Loma Linda Bar four times to plan a cocaine purchase. Mr. Rosalez went to Varela's home to inquire about buying cocaine as well. When Ortega arrived they discussed how many kilos to buy; Ortega told Mr. Rosalez that they would get a better deal if they bought two kilos. Telephone calls planning the drug deal were made to Varela from Mr. Rosalez' home. The following day Ortega and Mr. Rosalez travelled together to the Omni Store and jointly participated in the re-bagging of the money. Both Ortega and Rosalez crossed the parking lot with Varela to complete the cocaine transaction. Both men got into Agent Tovar's car, and both agreed that they would discuss future drug deals later. In sum, there is a plethora of evidence of the cooperative relationship between Ortega and Mr. Rosalez during this drug transaction. The trier of fact was entitled to infer from such substantial circumstantial evidence that Mr. Rosalez was a knowing participant in the conspiracy to possess cocaine. *Collins*, 966 F.2d at 1220; *see also United States v. Severson*, 3 F.3d 1005, 1010 (7th Cir.1993) (stating that cooperative relationship may support premise that defendants belonged to conspiracy); *Collins*, 966 F.2d at 1221 (explaining that a conspiracy is characterized by cooperative relationships).

After his arrest, Mr. Rosalez also admitted he knew that Ortega sometimes sold cocaine. He wore a leased pager like Ortega's. Telephone calls from Mr. Rosalez' residence to both Ortega's and Varela's homes were made on June 5 and 6, 1992. Moreover, in light of the surrounding circumstances, the court could reject Mr. Rosalez' suggestion that his question about Varela's "paloma" exhibited an interest in his dove rather than his cocaine. *See United States v. Aquilla*, 976 F.2d 1044, 1049 (7th Cir.1992) (stating that jury was free to reject defendant's story that "half-size guy" referred to the bottom man on a sewer construction crew rather than a half-kilogram of cocaine). All in all, the evidence of Mr. Rosalez' active and knowing participation in the drug transaction was overwhelming. He was present at all of the key acts, knew the goal of the conspiracy, and clearly worked to advance the end of the conspiracy. *See United States v. Simone*, 931 F.2d 1186, 1192–93 (7th Cir.) (approving "mere presence" instruction [although mere association with conspirators is insufficient, presence or a single act is sufficient to prove defendant's membership in conspiracy if circumstances show that the act was intended to advance the ends of the conspiracy] as accurate statements of the law), *cert. denied*, — U.S. —, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). The district court had ample grounds to conclude that he was not the innocent bystander that he claims to have been. *See United States v. Burrell*, 963 F.2d 976, 988 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992) (commenting that it is unlikely that drug traffickers discuss or deliver drugs in the presence of innocent bystanders); *United States v. Jones*, 950 F.2d 1309, 1313 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992) (holding that evidence establishes defendant was not innocent bystander). We hold that the evi-

dence supporting Mr. Rosalez' conviction for conspiracy to possess cocaine with the intent of distributing it was certainly sufficient to convict Mr. Rosalez of count 1 of the indictment.

### 2. Sufficiency of the evidence of attempt

■ Mr. Rosalez also asserts that the evidence was insufficient to support his conviction on count two, attempt to possess with intent to distribute cocaine. Pointing to our decisions in *United States v. Valencia,* 907 F.2d 671, 677 (7th Cir.1990), and *United States v. Cea,* 914 F.2d 881, 887 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992), Mr. Rosalez states that our caselaw requires some affirmative conduct, an overt act designed to aid in the success of the venture. *Cea,* 914 F.2d at 887, requires the government to prove that Mr. Rosalez "acted with specific intent to commit the underlying offense, and in addition took a substantial step toward its completion." According to Mr. Rosalez, the record does not show any affirmative conduct or overt act other than his mere presence at the scene of the drug dealings and his mere association with Ortega. That presence, he claims, is insufficient to demonstrate his attempt to possess cocaine with intent to distribute it under *Cea.*

Our review of the record, however, leads us to conclude that the evidence supports a finding that Mr. Rosalez' conduct clearly depicts his attempt to possess cocaine with intent to distribute it and belies his assertions of mere presence and association. As we have discussed above, the record clearly supports the conclusion that Mr. Rosalez was not an innocent observer. Mr. Rosalez, without Ortega, sought out Varela at his home to ask about buying cocaine. He furthered the cocaine purchase with Ortega by helping to hide the money for the cocaine deal in another bag and by accompanying Ortega both when delivering the money to Varela and when leaving Agent Tovar's car to put the cocaine in Ortega's car. These were substantial steps taken by the defendant in attempting to possess cocaine with intent to distribute it.

■ The offense of attempt to possess cocaine, like the offense of conspiracy to possess cocaine, is an inchoate crime which does not require completion of the underlying substantive offense. *United States v. Haddad,* 976 F.2d 1088, 1094 (7th Cir.1992); *see also United States v. Dominguez,* 992 F.2d 678, 682 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 250, 126 L.Ed.2d 203 (1993) (stating that the inchoate offense of conspiracy is complete upon entering into the illegal agreement). In this case the government successfully proved that Mr. Rosalez acted with specific intent to possess cocaine and took a substantial step toward its completion, even though no cocaine changed hands. *Cea,* 914 F.2d at 887. The record indicates Mr. Rosalez' active role in endeavoring to purchase the cocaine from Varela. The evidence was substantial and sufficient for a trier of fact to conclude that Mr. Rosalez both conspired and attempted to possess cocaine with intent to distribute it.

The cases upon which Mr. Rosalez relies to show that he did not take a substantial step toward the commission of the crime are not controlling. In *Cea,* the defendant was arrested as he left his home but before it was clear that he was on his way to pick up the drugs. This court therefore concluded that such an ambiguous action was not a substantial step to possess cocaine. 914 F.2d at 888. In contrast, Mr. Rosalez knew where the cocaine was, agreed to buy the cocaine, and went with Ortega to carry out the plan; they had paid for the drug and were planning to move the cocaine into their car when they were arrested. Equally inapposite is the Eighth Circuit's decision *United States v. Joyce,* 693 F.2d 838 (8th Cir.1982), in which the defendant initially intended to purchase the cocaine but refused to carry out the transaction when he was not allowed to see the cocaine first. 693 F.2d at 841. In this case there was no refusal to buy the cocaine. Rather, arrest came when the two defendants were taking a substantial step toward attempting to possess the cocaine they had just purchased. We conclude that the evidence in the record amply proved that Mr. Rosalez attempted to possess the cocaine with intent to distribute it.

## B. *Sentencing*

Mr. Rosalez contends that the district court committed several errors when it determined his sentence. He first points out that the court wanted to impose a lesser sentence on him than on Ortega, but wrongly believed that Mr. Rosalez would not qualify for a two-point reduction for acceptance of responsibility because he went to trial claiming his innocence. Mr. Rosalez also submits that he deserved downward adjustments, both as a minimal or minor participant in this criminal activity and as a first offender with a "clean" record who displayed aberrant behavior, and that the district court erred by failing to consider those departures.

The government responds that Mr. Rosalez, instead of directly appealing the district court's refusal to give a two-point reduction for acceptance of responsibility, simply asserts that the district court misunderstood the pertinent sentencing guideline. The government also states that Mr. Rosalez has waived his other claims for a reduction of his offense level because he never raised them at sentencing.

We review such questions of law as a district court's interpretation of the Guidelines de novo. *United States v. Gio,* 7 F.3d 1279, 1289 (7th Cir.1993); *United States v. Bruder,* 945 F.2d 167, 169 (7th Cir.1991) (en banc). We give due regard to the district court's credibility determinations and factual findings, *see* 18 U.S.C. § 3742(e), and review such determinations under a clearly erroneous standard. *Bruder,* 945 F.2d at 169. The version of U.S.S.G. § 3E1.1 in effect on the date Mr. Rosalez was sentenced is applicable. 18 U.S.C. § 3553(a)(4). We will consider each of the issues raised by Mr. Rosalez in turn.

### 1. Reduction for acceptance of responsibility

Mr. Rosalez asserts that the district court mistakenly believed that a reduction in Mr. Rosalez' sentence for acceptance of responsibility was not appropriate because Mr. Rosalez went to trial instead of pleading guilty.

A defendant bears the burden of proving his acceptance of responsibility and entitlement to the reduction in offense level. *United States v. Kerr,* 13 F.3d 203, 205 (7th Cir.1993); *United States v. Skinner,* 986 F.2d 1091, 1100 (7th Cir.1993). The sentencing judge, having a unique vantage point from which to survey and evaluate a defendant's acceptance of responsibility, must be given great latitude and deference when making that subjective decision. U.S.S.G. § 3E1.1, comment. (n. 5); *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993); *United States v. Washington,* 969 F.2d 1073, 1081 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993); *see also* 18 U.S.C. § 3742(e). For that reason we uphold the sentencing court's determination concerning a defendant's acceptance of responsibility unless it constitutes clear error. *United States v. Pitz,* 2 F.3d 723, 732 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2141, —— L.Ed.2d —— (1994).

If a defendant clearly demonstrates acceptance of responsibility for his offense, the sentencing judge may decrease the defendant's offense level by two levels. U.S.S.G. § 3E1.1(a). "The question of whether a defendant has accepted responsibility for his crimes is a factual one, depending largely on credibility assessments of the sentencing judge." *Skinner,* 986 F.2d at 1100 (quoting *United States v. Guadagno,* 970 F.2d 214, 224 (7th Cir.1992)).

In this case, before the sentencing hearing began, the district court expressed its concern about fairly apportioning the sentences of the coconspirators Rosalez and Ortega.

> I am in the anomalous position of perhaps having to impose a greater penalty on Mr. Rosalez than on Mr. Ortega. And it's been my belief as a judge that ... I never punished people for availing themselves of their procedural rights.

Tr. V at 5. He gave the defendants an opportunity to state their views and to express their contrition concerning their acceptance of responsibility for their criminal activities, but also recognized the guideline commentary note 2, which states that the acceptance of responsibility adjustment is not

intended to apply to a defendant who expresses remorse only after he is convicted at trial.[3] Mr. Rosalez expressed regret only for making a telephone call, but refused "to accept everything that Varela has said about me." Tr. V at 10. In the end, the district court denied the two-point acceptance of responsibility reduction because he realized that Mr. Rosalez' activities extended far beyond the telephone call; Mr. Rosalez was at the scene of the cocaine transaction and participated in it with Ortega. The district court's determination is one that we do not find to be clearly erroneous. Both Mr. Rosalez' statements and the facts in the record indicate that Mr. Rosalez did not truthfully admit being involved in the offense and did not express remorse concerning his conduct. See U.S.S.G. § 3E1.1, comment. (n. 1(a)) ("[A] defendant who falsely denies ... relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility"); *United States v. Donovan,* 996 F.2d 1343, 1344–45 (1st Cir. 1993) (listing cases).

■ The commentary to § 3E1.1 does not limit the acceptance of responsibility reduction solely to pre-trial admissions of guilt; nor does it completely rule out the possibility that a reduction could be granted after a finding of guilt.[4] However, the decision to grant or to deny the reduction "will be based primarily upon pretrial statements and conduct." U.S.S.G. § 3E1.1, comment. (n. 2); *see also United States v. Harrington,* 947 F.2d 956, 962–63 (D.C.Cir.1991) (stating that § 3E1.1 allows an acceptance of responsibility adjustment whether the conviction is based upon a guilty plea or a finding of guilt at trial, but Note 2 "clarifies that a defen-

dant's *pretrial* behavior, not his post-trial confession or conversion, is the prime indicator of his acceptance of responsibility for criminal conduct"). In this case, the decision not to grant a reduction was based entirely upon the lack of any pre-trial remorse and upon a lack of contrition in Mr. Rosalez' solicited post-trial statements. See *United States v. Speck,* 992 F.2d 860, 863 (8th Cir. 1993) (holding that defendant who continued to deny involvement in crimes of which he was convicted has not demonstrated an acceptance of personal responsibility).

■ A judge may determine that a defendant has failed to accept responsibility by finding that he failed to demonstrate truthfulness and remorse prior to "the final hour." *United States v. Osborne,* 931 F.2d 1139, 1155 (7th Cir.1991); *see also United States v. McQuay,* 7 F.3d 800, 802 (8th Cir.1993) (denying reduction for defendant who fails to disclose information concerning his criminal involvement until day before second trial); *Tolson,* 988 F.2d at 1499 (expressing skepticism of defendant's "last-minute, formalistic demonstration of remorse"). In this case, Mr. Rosalez regretted only a telephone call; he showed no remorse about being a participant in the drug transaction. At no time did Mr. Rosalez admit that he knowingly and intentionally carried out the crimes for which he was convicted. See *United States v. Agrell,* 965 F.2d 222, 228 (7th Cir.1992) (holding that denial for acceptance of responsibility is appropriate when defendant denies essential factual elements of his guilt); *see also United States v. Carroll,* 6 F.3d 735, 739 (11th Cir. 1993), *cert. denied,* ⎯ U.S. ⎯, 114 S.Ct. 1234, 127 L.Ed.2d 577 (holding court erred in granting § 3E1.1 reduction to defendants

---

**3.** The full text of Application Note 2 of the Commentary to U.S.S.G. § 3E1.1 states:

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a

defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

**4.** *Cf. United States v. Bean,* 18 F.3d 1367, 1368 (7th Cir.1994) (stating U.S.S.G. § 3E1.1, comment. (n. 1(c)) may permit sentence reduction for repayment prior to adjudication of guilt whether or not defendant pleads guilty to charge).

who never admitted guilt or expressed any remorse). A "grudging and incomplete admission, accompanied by an excuse to minimize his own culpability, does not indicate acceptance of responsibility." *United States v. Aquilla*, 976 F.2d 1044, 1053 (7th Cir. 1992); *see also United States v. Phibbs*, 999 F.2d 1053, 1076 (6th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994) (noting that defendant's statement does not show contrition). The district court was in the best position to make that credibility determination. In this case, the court properly denied the reduction because Mr. Rosalez failed to demonstrate the requisite acceptance of responsibility and not because the court misunderstood Note 2 of the Commentary to § 3E1.1. Accordingly, we hold that the court's refusal to grant a sentence reduction based upon U.S.S.G. § 3E1.1 was not clearly erroneous.

### 2. Reduction for minimal or minor role or aberrant behavior

 Mr. Rosalez maintains that the district court erred by refusing to reduce his base offense level to reflect his minor role in the cocaine conspiracy and his single act of aberrant behavior marring an otherwise "clean" record. However, Mr. Rosalez never requested those reductions prior to or during the sentencing hearing. He has offered this court no reason for his failure to seek the reductions in a timely manner. A defendant who fails to request a reduction during sentencing has waived this issue. *United States v. Martinez*, 939 F.2d 412, 416 (7th Cir.1991); *United States v. Sergio*, 934 F.2d 875, 881 (7th Cir.1991). Once the sentencing claim has been waived, we shall review it only by application of the plain error rule. *United States v. Jackson*, 974 F.2d 57, 60 (7th Cir. 1992), *cert. denied*, — U.S. —, 113 S.Ct. 2976, 125 L.Ed.2d 673 (1993); *United States v. Heilprin*, 910 F.2d 471, 474 (7th Cir.1990). We note that plain error "must be of such a great magnitude that it probably changed the outcome of the trial." We

reverse for plain error "only when [we are] convinced that it is necessary to avert an actual miscarriage of justice."

*Jackson*, 974 F.2d at 60 (citations omitted).

We find no plain error, indeed no error at all, in this case, for the record does not support a justification for such a sentence reduction. To merit a downward departure because of his minimal or minor participation in the conspiracy, Mr. Rosalez must show that he is either the least culpable of those involved in the conspiracy ("minimal" participant) or less culpable than most of the other participants ("minor" participant). U.S.S.G. § 3B1.2, comment. (nn. 1–3); *see also* § 3B1.2, comment. (backg'd.) (Guideline "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."); *Kerr*, 13 F.3d at 206 (noting there is "no formulaic solution" in determining whether one is minor or minimal or just a lesser participant). To merit a downward departure for a single act of aberrant behavior under U.S.S.G. Ch. 1, Pt. A, Intro. ¶ 4(d), we have held that the defendant's behavior "must be more than merely something 'out of character' or the defendant's first offense."[5] *United States v. Andruska*, 964 F.2d 640, 645 (7th Cir.1992) (quoting *United States v. Carey*, 895 F.2d 318, 325 (7th Cir.1990)). A single, spontaneous act may be aberrant behavior; continued involvement with someone known to sell drugs from time to time, combined with efforts to help that person in a drug sale and a refusal to acknowledge that he had engaged in wrongful conduct, does not constitute aberrant behavior. *Andruska*, 964 F.2d at 646.

 It is clear that Mr. Rosalez' actions cannot be classified as a single, unplanned, spontaneous act. Nor does he succeed in convincing us that the district court should reconsider his belated claim to a mitigating role. To show his minor or minimal participation in the conspiracy, Mr. Rosalez

5. Because this circuit does not consider a defendant's first offense to be "aberrant behavior," Mr. Rosalez is unable to rely on the Ninth Circuit's decision *United States v. Morales*, 972 F.2d 1007, 1011 (9th Cir.1992), *cert. denied*, — U.S.

—, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993), which vacated the defendant's sentence on the ground that he was convicted of one single isolated criminal act.

uses the same arguments that we rejected in his challenges to the conviction: Ortega negotiated and carried out the deal, and Mr. Rosalez merely accompanied him. The record clearly offered sufficient evidence of Mr. Rosalez' integral involvement in the conspiracy to uphold his conviction. That same evidence of his substantial participation leads us to recognize that it was certainly not plain error that Mr. Rosalez was not granted other reductions in his sentence. The application of the "Mitigation Role" section "is heavily dependent upon the facts of the particular case." § 3B1.2 comment. (backg'd). The fact that Ortega played a more significant role in the conspiracy does not, of itself, entitle Mr. Rosalez to a reduction as a minor or minimal participant. *United States v. Johnson*, 997 F.2d 248, 253 (7th Cir.1993); *see also Pitz*, 2 F.3d at 733 (concluding that drug courier is not less culpable than other participants in conspiracy). Because there is no indication in the record that the district court believed it lacked the authority to grant departures, we presume that the court declined to depart under the Guidelines as a matter of discretion, and recognize our lack of jurisdiction to review the district court's decision not to depart from the prescribed sentencing range. *United States v. Helton*, 975 F.2d 430, 434 (7th Cir.1992); *United States v. Franz*, 886 F.2d 973, 978 (7th Cir. 1989). We find no plain error in the district court's sentencing determination.

## CONCLUSION

The record in this case clearly reflects Mr. Rosalez' substantial role as an integral part of all facets of the drug transaction. Consequently, we affirm the judgment of the district court.

AFFIRMED.