124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Khoan Q. GIANG, Defendant-Appellant.
 No. 97-1495.
 United States Court of Appeals, Seventh Circuit.
 July 21, 1997.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division.
 Before Hon. RICHARD A. POSNER, Chief Judge Hon. RICHARD D. CUDAHY Circuit Judge Hon. KENNETH F. RIPPLE, Circuit Judge.
 
 ORDER
 
 1
 A jury found Khoan Q. Giang guilty of five counts of violating federal law by using and attempting to use counterfeit credit cards. He appeals the trial judge's denial of his motion for acquittal on count four. Fed.R.Crim.P. 29(a). This count charged Giang with attempting to use a counterfeit American Express card with intent to defraud at an electronics store in Mishawaka, Indiana. 18 U.S.C. §§ 1029(a)(1) and (b)(1). Giang claims that although he walked into the store with an accomplice who was carrying a counterfeit credit card, neither he nor his accomplice took steps sufficient to give rise to liability for attempting the crime at issue.
 
 
 2
 The events surrounding count four took place on August 20, 1996. On the afternoon of that date, two men, one of whom was later identified as Giang (the other was identified as co-defendant Kin Fong So), were at the Best Buy store in Mishawaka, Indiana. Giang placed a printer, hard drive, and other items on the counter at cashier Whitney Sholly's register. Gaile Whitman, Sholly' supervisor, who had received a tip from the manager of a nearby Office Depot store that two men matching Giang's and So's description had engaged in suspicious activity at that store, upon seeing them told the store security guard to call the police. Whitman also went up to Sholly's register to stall the transaction.
 
 
 3
 As Sholly rang-up the items, Giang, apparently in response to gestures by So, left the store. So then informed the cashier that he was going to pay with a credit card. When Sholly told him the total price was $955.46, he stated that he did not have payment with him and that he would be right back. He never tendered a credit card. As he attempted to leave the store, the store security guard approached So and requested that he accompany him to the security office. While So waited in the security office, the security guard went to the parking lot and located Giang sitting in a minivan. He asked Giang to accompany him to the office and Giang complied.
 
 
 4
 A police officer soon arrived. After obtaining So's consent to search the van, the officer found a cigarette box containing fifteen American Express Cards, all with the name Xuanya Hua, but with different account numbers. A subsequent inventory search of the van revealed several items of merchandise typically carried at electronic stores, such as computer hard drives, video games, cellular telephones and computer software. Police officers then took So and Giang to the Office Depot store, where they were identified by two employees as having been in the store earlier in the day. These employees testified at trial that the two men brought several items of merchandise to the cash register and that So, after Giang left the store, attempted to pay with an American Express card. When authorization was refused for the card, So took back the card and said he would pay with cash, which he would have to obtain from his friend (who was then outside the store). So then left and never returned. Giang, when interviewed by a Secret Service agent, stated that he knew that So possessed counterfeit credit cards on the day in question, but that he had asked So not to use them.
 
 
 5
 18 U.S.C. § 1029(a)(1) makes criminal the production, use or trafficking in "counterfeit access devices" with the intent to defraud; § 1029(b)(1) criminalizes the attempt to commit this offense. Count 4 charged Giang with attempt to commit this crime (for he clearly did not actually complete the crime). Thus, the sole issue is whether there was sufficient evidence that he attempted to use a counterfeit American Express card.
 
 
 6
 This court has endorsed the approach to criminal liability for attempt enunciated in United States v. Mandujano, 499 F.2d 370, 376 (5th Cir.1975), which has been widely accepted in the circuit courts of appeal. See, e.g., United States v. Neal, 78 F.3d 901, 906 (4th Cir.), cert. denied, 117 S.Ct. 152 (1996); United States v. Shelton, 30 F.3d 702, 705 (6th Cir.1994); United States v. Nelson, 66 F.3d 1036, 1042 (9th Cir.1995). A conviction for attempt requires proof both that a defendant acted with specific intent to commit the underlying offense, and that he took substantial steps towards completing the offense. United States v. Cea, 914 F.2d 881, 887 (7th Cir.1990); United States v. Rovetuso 768 F.2d 809, 821 (7th Cir1985) (citing Mandujano ). Giang's argument is narrow, impliedly focusing only on the lack of proof of the second element. Specifically, Giang asserts: "This charge specifically refers to using the American Express card to defraud. To use the card the defendant or his partner had to, at the very least, refer to using the American Express card at Best Buy. They did not." (Brief of Appellant at 9.) Giang, thereby tacitly concedes that he had the requisite mental state for attempt. Nor does he claim that he could not be convicted under a theory of accomplice liability, thereby conceding that if So engaged in an attempt then there was sufficient evidence to uphold Giang's conviction. See 18 U.S.C. § 2 ("Whoever ... aids, abets, counsels, commands, induces or procures [the] commission [of a crime], is punishable as a principal."); United States v. Gabriel, 810 F.2d 627, 636 (7th Cir.1987) ("The requisite mental state for aiding and abetting is that the defendant intentionally encourage or assist another in the commission of the offense. .... Proof of this criminal intent may be inferred from the surrounding circumstances)"). His argument is limited to the assertion that neither he nor his accomplice took sufficient steps to be liable for attempt.
 
 
 7
 A substantial step necessary to sustain a conviction for attempt consists of actions that are "something more than mere preparation," Rovetuso, 768 F.2d at 821 (quoting United States v. Manley, 632 F.2d 978, 987 (2d Cir.1980)) (internal quotations omitted), but which fall short of those acts that would be necessary to complete the crime. Cea, 914 F.2d at 888. The "conduct [must be] strongly corroborative of the firmness of the defendant's criminal intent." Rovetuso, 768 F.2d at 821 (quoting United States v. Green, 511 F.2d 1062, 1072 (7th Cir.1975)) (internal quotations omitted). The focus is on what the actor has done, not on what remains to be done to complete the crime. Id. at 821, n. 12 (citing Model Penal Code § 5.01 Comment at 26, 47 (tent. draft No. 10, 1960)). This court, relying upon doctrine developed in other circuits, has further stated that "the behavior must be of such a nature 'that a reasonable observer viewing it in the context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.' " Id. (quoting Manley, 632 F.2d at 988).
 
 
 8
 We apply a de novo standard of review to the district court's denial of a motion for acquittal made pursuant to Federal Rule of Criminal Procedure 29(a). United States v. Draves, 103 F.3d 1328, 1331 (7th Cir.), cert. denied, No. 96-9174, 1997 WL 333287 (1997). Where the defendant makes such a motion on the ground of a lack of sufficient evidence, the question facing both the district court and this court is whether there is evidence from which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 1332. We have described this standard as presenting "a nearly insurmountable hurdle to the defendant." United States v. Pulido, 69 F.3d 192 (7th Cir.1995) (quoting United States v. Teague, 956 F.2d 1427, 1433 (7th Cir.1992)).
 
 
 9
 Applying the above standard to Giang's argument that no substantial step was taken in the present case, the issue can be framed as follows: was there sufficient evidence from which a rational jury could have concluded that So (remember Giang does not challenge his liability as an accomplice--if So is guilty of attempt so is Giang) took a substantial step towards completion of the crime? In the present case the evidence was sufficient for a jury to conclude that he had. The cashier at the Best Buy store testified that Giang and So were in the check-out line with merchandise, which they placed on the counter as though they wished to purchase it. She stated that her manager (who as described above had been tipped off about the scheme) tried surreptitiously to intervene by asking her if she wanted to take a break. She further testified that when she asked for payment from So, at which point Giang had repaired to the minivan, he acted nervous, started stuttering, and said he did not possess any form of payment.
 
 
 10
 The above evidence (including the phony American Express cards recovered from the van), coupled with testimony from employees at the Office Depot store, that So had attempted to pay with an invalid credit card there a short while earlier using the same modus operandi as they used at the Best Buy, was sufficient for a rational jury to conclude that Giang and So had taken a substantial step toward using a fraudulent American Express card with intent to defraud. This is true even though So never presented a card or even indicated his form of payment. The parties had clearly gone beyond the planning stage, and had taken a series of steps toward completion of the alleged acts, which were corroborative of their criminal intent. In fact, presentation of the American Express card would have made the crime complete. See Neal, 78 F.3d at 901 ("If completion of a crime was a necessary predicate to criminal prosecution, an attempt would never be criminal.")
 
 
 11
 AFFIRMED.