NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 3, 2015
Decided February 2, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1475

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 14-CR-00019 |
| CALVIN T. BROWN, a/k/a C-MURDER, *Defendant-Appellant.* | Jane E. Magnus-Stinson, *Judge.* |

## O R D E R

The district court convicted Calvin T. Brown at a bench trial of two counts of attempted possession with intent to distribute five grams or more of methamphetamine. He challenges his convictions, arguing that the evidence was insufficient to sustain his convictions and that the attempt statute under which he was convicted, 21 U.S.C. § 846, is void for vagueness. For the following reasons, we affirm the district court.

## I.      Background

Calvin Brown was swept up in a large-scale investigation of a drug distribution organization run by Wesley Hammond. Hammond used a contraband cell phone to sell drugs while incarcerated in an Indiana state prison and relied on his associates to complete sales. Based on the evidence obtained from a wiretap of Hammond's phone, Brown was indicted on one count of conspiracy to possess with intent to distribute methamphetamine and two counts of attempting to possess with intent to distribute five grams or more of methamphetamine.

At the bench trial, the pertinent evidence consisted of:

1) Several intercepted mobile phone calls and text messages between Brown and Hammond in which Brown negotiated the purchase and delivery of two half-ounces of pure methamphetamine (the deliveries occurred on February 16 and March 2, 2013);
2) Intercepted calls and messages between Hammond and his supplier, Ivan VanBuren, as well as his distributor, Dewayne Perry;
3) A package of methamphetamine that was discussed in the communications, but not meant for Brown;
4) A surveillance video of Brown entering and leaving Perry's residence recorded shortly after Brown arranged with Hammond to purchase methamphetamine at Perry's residence;
5) The testimony of the FBI agent in charge, Special Agent Edward M. Wheele, who described the events of the investigation and interpreted the more obscure communications; and
6) The testimony of two women who also bought drugs from Hammond and Perry to sell and use, but had no knowledge of Brown.

Brown did not dispute that the evidence showed he made the two purchases of methamphetamine. But he did dispute that he was involved in a conspiracy to distribute methamphetamine and that he intended to distribute the drugs he purchased.

The district court acquitted Brown of the conspiracy charge after finding that there was no evidence that Brown had agreed to participate with Hammond in an arrangement involving mutual dependence, cooperation, or assistance in distributing drugs. Specifically, the district court found that there was no evidence of the multiple large quantity purchases on credit that are quintessential evidence of a conspiratorial

agreement to distribute drugs. *See United States v. Brown*, 726 F.3d 993, 1003 (7th Cir. 2013) (involving a different Brown). There was also no physical evidence seized from Brown such as drug paraphernalia or ledgers; no evidence that Hammond or his associates warned Brown about police or competitors; no evidence of a relationship between Brown and VanBuren; no evidence of an agreement to share profits or of commissions; and no evidence that Hammond instructed Brown on how, where, or to whom he should sell drugs. There was evidence that Brown agreed with Hammond to buy drugs on two occasions. But the district court found this agreement, by itself, was insufficient to support a conspiracy charge even though Hammond knew that Brown intended to distribute the drugs. *See id.* at 998.

The two charges of attempted possession with intent to distribute turned out differently. The district court found that Brown admitted, and the government proved beyond a reasonable doubt, that Brown attempted and succeeded at purchasing a half ounce of methamphetamine from Hammond on two occasions. According to the district court, these purchases constituted the substantial step necessary for attempt. *See United States v. Morris*, 549 F.3d 548, 550 (7th Cir. 2008). For its finding that Brown made the purchases with the intent to distribute the drugs, the district court relied on the testimony of Special Agent Wheele and the two women who also bought drugs from Hammond and Brown's own words. All witnesses testified that the half-ounce quantities Brown purchased were inconsistent with personal use. But the district court relied more on Brown's own words captured by the wiretap. In conversations with Hammond about his drug purchases, Brown said: "but no, they supposed to be riding down on me, too"; "and what time you going to have cuz get at me because I got some [expletive]s on deck too"; and "white boy slides through, give him a quad, like, man." The district court relied on its own inferences to find beyond a reasonable doubt that these statements in context proved Brown's intent to deliver. The district court found Brown guilty of both attempt counts.

Although not referenced in the district court's ruling, the evidence also included a conversation a few days after Brown's first purchase in which Brown describes to Hammond the effect the drugs had on another person: Brown tells Hammond, "So I'm like [expletive] it, I'm like this bitch tripping, like on nothing cuz, like some dope fiend." To which Hammond responded, "This is what I want to tell you, that's [expletive] uncut, they can't make em do that."[1]

---

[1] Special Agent Wheele testified that this conversation meant that the methamphetamine provided by Brown was 100 percent pure, with no inert substances to make it less strong. The two women who also

## II.      Analysis

Brown raises two issues on appeal: 1) whether the government's evidence of his intent to distribute methamphetamine and of the substantial step in furtherance of the crime was insufficient to support his convictions; and 2) whether the statute under which he was convicted is unconstitutionally vague.

## A.      Sufficiency of the Evidence

To succeed on his claim of insufficient evidence, Brown faces a high hurdle: "we reverse only if, after viewing the evidence in the light most favorable to the government, we determine that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010). To obtain Brown's convictions for attempted possession with intent to distribute methamphetamine, the government was required to show that 1) Brown acted with the specific intent to possess methamphetamine with the intent to distribute it; and 2) Brown engaged in conduct which constituted a substantial step toward the commission of the offense. *United States v. Stallworth*, 656 F.3d 721, 728 (7th Cir. 2011). Brown argues that the evidence was insufficient to establish both that he had the intent to distribute the drugs he purchased and that he took a substantial step.

The first question, then, is whether a rational trier of fact could have found beyond a reasonable doubt that Brown intended to distribute the drugs he purchased. Brown points to weaknesses in the testimony that his drug purchase amounts were inconsistent with personal use and to the sparsity of the evidence concerning what he did with the drugs he purchased. And the evidence was indeed sparse. The government did not identify "white boy," the persons who were "riding down" on Brown, the others who were "on deck too," or the woman who was "tripping … like some dope fiend." Nor did the government present evidence of an intent to distribute to anyone else. In finding that Brown had the requisite intent, all that the district court had to rely on was the purchase amounts and the recorded telephone and text message conversations mentioned above. Nonetheless, after viewing the evidence in the light most favorable to the government, we hold that it was enough for a rational trier of fact to find beyond a reasonable doubt that Brown had the intent to distribute. Although the drug quantities may have been small enough for personal use, the evidence was that this was not likely,

---

bought drugs from Hammond for personal use and distribution testified that the methamphetamine they received was likewise pure.

especially given that there was no evidence that Brown was a serious methamphetamine user. Furthermore, the government was not required to show that Brown actually distributed the drugs he purchased, but that he intended to distribute them. Not only do the conversations support this, they support the finding that Brown distributed the drugs he successfully purchased from Hammond to at least one woman.

In an effort to demonstrate the insufficiency of this evidence, Brown compares his case to *United States v. Cea*, 914 F.2d 881 (7th Cir. 1990). In *Cea*, there was ample evidence to support a conspiracy conviction, namely, that Cea *agreed* to possess cocaine with the intent to distribute it. *Id*. at 885–87. However, there was insufficient evidence to support a conviction for *attempt* to possess cocaine with the intent to distribute it, because the evidence of a substantial step was lacking. Cea agreed over the telephone to "be over shortly" to buy the drugs and was arrested upon leaving his home shortly thereafter. *Id*. at 887–89. There was no evidence in *Cea* of where the deal was to take place, where Cea was going, where he was arrested, and whether he even had the money on him necessary to complete the transaction. We held that more evidence of a substantial step was necessary. *Id*. at 889. Brown argues that the government should have shown the same level of intent for his attempt conviction as it did for Cea's conspiracy conviction. We disagree. *Cea* represents the upper end of the spectrum. The evidence of intent in *Cea* demonstrated that "[n]o one could have tried any harder than Cea to culminate the deal." *Id*. at 887. The government was not required to establish the same "untiring effort" in Brown's case. *Id*.

The second question is whether a rational trier of fact could have found beyond a reasonable doubt that Brown took a substantial step in furtherance of the crime. According to Brown, the substantial step in his case was his brief visit to Perry's residence that was recorded by a surveillance camera, a fact reminiscent of *Cea*. But unlike *Cea*, the government presented not only evidence that Brown told Hammond that he was going to pick up the drugs, but evidence that Brown arrived at the transaction location, that he spent five minutes there, and that Perry was present during this time. Moreover, the district court found that Brown took a more substantial step than his visit with Perry. Brown also took the substantial step of making all the arrangements to pick up his two half-ounce purchases of methamphetamine and actually possessing them. Brown did not contest that he made these purchases. The district court found that the government had proved them beyond a reasonable doubt, not only from the surveillance video, but from the wiretapped telephone and text message conversations as well. After viewing the evidence in the light most favorable to the government, we hold that this was enough for a rational trier of fact to find beyond a reasonable doubt

that Brown took a substantial step in furtherance of the crime. *See United States v. Magana*, 118 F.3d 1173, 1198–99 (7th Cir. 1997) (holding that evidence of telephone conversations and a visit to a dealer's house that showed the defendant obtained the cocaine he sought was sufficient to uphold a conviction for attempted possession with intent to distribute cocaine). The evidence, therefore, was sufficient to support Brown's convictions.

## B.      Void for Vagueness Challenges

We review a constitutional challenge to a federal statute de novo. *United States v. Wilson*, 73 F.3d 675, 678 (7th Cir. 1995). According to Brown, his conviction under 21 U.S.C. § 846, the attempt statute, violates due process because the statute fails to give notice of the conduct it prohibits, rendering it void for vagueness. A statute must provide a person of ordinary intelligence fair notice of what is prohibited and provide enough of a standard that "seriously discriminatory enforcement" is neither authorized nor encouraged. *United States v. Jones*, 689 F.3d 696, 700 (7th Cir. 2012), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). If a statute does not provide this clarity, then its vagueness renders it void. *Id*. Brown claims that § 846 fails to meet this requirement because it does not define attempt or set forth the elements of an attempt offense, but only sets out the penalties for committing an attempt offense. Brown further asserts that since the statute fails to provide a standard, it has improperly delegated the authority to define attempt crimes to the courts, in violation of the separation of powers doctrine. *See Jones*, 689 F.3d at 702.

A simple examination of the statute's language shows that is not the case: "Any person who *attempts* or conspires *to commit any offense defined in this subchapter* shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846 (emphasis added). Clearly, the conduct prohibited by § 846 is attempting to conduct another crime under the subchapter, in this case § 841. It is § 841 that defines the crime of possession with intent to distribute. 21 U.S.C. § 841(a)(1). And, it is § 841, not § 846, that ultimately specifies the penalty for Brown. 21 U.S.C. § 841(b)(1)(B)(viii). The fact that Congress did not define the word "attempt" in the statute does not render it vague. Congress need not define every term, and a court may rely on the ordinary and natural meaning of words. General terms can still give fair and clear warning even if the specific facts at issue are not specified by the statute. *See United States v. Lanier*, 520 U.S. 259, 271 (1997); *Smith v. United States*, 508 U.S. 223, 228 (1993); *United States v. Cueto*, 151 F.3d 620, 635 (7th Cir. 1998).

**III. Conclusion**

Because the evidence was sufficient to support Brown's conviction for attempted possession with intent to distribute five grams or more of methamphetamine, and the attempt statute under which he was convicted is not unconstitutionally vague, we **AFFIRM** the judgment of the district court.