> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted November 21, 2018[*]
Decided November 30, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-1543

| | |
|---|---|
| UNITED STATES OF AMERICA | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, Eastern Division. |
| | |
| *v.* | No. 12 CR 697-1 |
| | |
| ANTWAN JONES, | Virginia M. Kendall, |
| *Defendant-Appellant.* | *Judge.* |

## O R D E R

A grand jury returned a multicount superseding indictment charging Antwan Jones and his two codefendants with various drug-related offenses. Among other crimes, Jones was charged with conspiracy to possess with intent to distribute over five kilograms of cocaine, 21 U.S.C. § 846; attempt to possess with intent to distribute over five kilograms of cocaine, *id.* § 841(a)(1); and possession of a firearm in furtherance of a

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A). A jury convicted Jones on all nine counts against him. Jones then asked the district court to allow him to represent himself. The judge accepted the waiver of counsel and allowed Jones to proceed pro se, as he continues to do on appeal. Jones principally challenges the validity of his indictment for conspiracy and the sufficiency of the evidence presented at trial.

At trial the government presented evidence that a drug conspiracy existed between Antwan Jones, James Jones, and Calvin Nelson. Nelson testified that the three bought, stored, and sold drugs out of a multiunit apartment building that Jones leased and in which James Jones and Nelson lived. Nelson elaborated that he stored cocaine, crack, and heroin in his apartment for Jones, and he observed Jones receive, in a variety of transactions, a total of 22.5 kilograms of cocaine at Nelson's apartment. As corroborating evidence the government also introduced scores of Jones's phone conversations related to drug dealing and the testimony of law-enforcement agents about their surveillance of Jones and his associates.

The government also presented evidence of Jones's attempt to buy 500 grams or more of cocaine on one occasion. Recorded phone calls show that Jones arranged with Edgar Delgado to purchase a large quantity from Delgado's friend. In a call on April 11, 2012, Jones verified the price of a kilogram and told Delgado that he "may have to do that." He also asked whether the supplier would lower the price if he "went all the way," which according to agents' testimony, referred to purchasing the entire kilogram of cocaine. In a recorded call the morning of April 15, Delgado told Jones that the supplier was almost at Delgado's house (the arranged delivery spot), and Jones responded that he was "leaving out." A police officer surveilling the house testified that he witnessed the putative supplier arrive at Delgado's house. In a recorded call about 40 minutes later, Delgado told Jones that the supplier left because "he didn't feel right." The same officer later pulled over the supplier and found 1.25 kilograms of cocaine in his car.

The prosecution also presented evidence that Jones used a firearm in furtherance of a drug conspiracy. On the same day Jones was arrested, June 6, 2012, officers recovered a handgun from his car, which was in a garage located a few feet from the apartment building. The gun was found in a hidden compartment and next to approximately $18,000 in cash. Nelson testified that in a call on January 17, 2012, Jones told him he had heroin in the same car. The indictment charged that "on or about June 6, 2012," Jones possessed the gun in furtherance of a drug conspiracy.

On appeal Jones first challenges his conviction for conspiracy. First, he argues that the indictment was defective for failing to include specific intent as an element. Jones asserts that because every essential element must be alleged in an indictment, *United States v. Miller*, 883 F.3d 998, 1002 (7th Cir. 2018), and specific intent is an element of § 846, *see United States v. Ross*, 510 F.3d 702, 713 (7th Cir. 2007), the government's failure to allege specifically that he "knowingly and intentionally" conspired is grounds for dismissing this charge. Because Jones challenges his indictment for the first time on appeal, "it is immune from attack unless it is so obviously defective as not to charge the offense by any reasonable construction." *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003).

The indictment here was not "obviously defective." *Id.* "[A]n indictment under 21 U.S.C. § 846 is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated … ." *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir. 1982) (quoting *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir. 1975)). These requirements were satisfied: The indictment alleged that Jones "did conspire" to "knowingly and intentionally possess with intent to distribute" cocaine and other narcotics, beginning in February 2010, in violation of 21 U.S.C. § 846. True, the indictment did not explicitly accuse Jones of "knowingly and intentionally" conspiring. The verb "conspire," however, necessarily entails an intent to act. *See United States v. Cox*, 536 F.3d 723, 727–28 (7th Cir. 2008) (explaining that the indictment for § 846 did not need to define the term "conspire" to be sufficient). To "conspire," like to "induce" or "entice," *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000), involves intent.[1] And "[i]t is not necessary to spell out each element" of an offense in an indictment so long as "each element [is] present in context." *Id.* at 571; *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 107–08 (2007) (explaining that the indictment need not specifically allege each element if it is stated implicitly).

Jones next challenges the sufficiency of the evidence to support the finding that the conspiracy trafficked in at least five kilograms of cocaine. He acknowledges that at times he bought cocaine by himself and contends that those transactions were not in furtherance of any conspiracy with James Jones and Nelson. Because Nelson testified to only two transactions in which he acted on Jones's behalf involving less than five

---

[1] In an unpublished decision, a panel of this court concluded that the words "did conspire" suffice to allege a knowing and intentional agreement. *United States v. Barrios-Ramos*, 732 F. App'x 457, 460 (7th Cir. 2018).

kilograms of cocaine total, Jones contends that the government failed to prove the five-kilogram quantity.

Jones's argument rests upon a view that because only Nelson and James Jones were listed as coconspirators in the indictment, they had to be directly involved in every transaction, and if they were not, Jones's transactions were unrelated "buyer-seller" deals. But the quantity of drugs implicated in the conspiracy is not limited to those that the named coconspirators sold together. Each conspirator is liable "for amounts involved in transactions by co-conspirators that were reasonably foreseeable to him." *United States v. Jones*, 900 F.3d 440, 446 (7th Cir. 2018). Nelson testified that Jones used Nelson's apartment for many drug deals, amounting to him receiving over 20 kilograms of cocaine. Although Jones insists that these deals were separate from the conspiracy, the jury was entitled to conclude otherwise. Jones conducted business out of Nelson's apartment, in a building Jones leased, and Nelson observed the deals and watched Jones count the money. A reasonable jury, having concluded that a conspiracy existed among Jones, Nelson, and James Jones, could conclude the cocaine in these transactions was part of the conspiracy. *See United States v. Moon*, 512 F.3d 359, 364 (7th Cir. 2008) (concluding that the jury could infer from the evidence that the parties were working together).

Jones also challenges the sufficiency of the evidence of his attempted possession of cocaine stemming from the unconsummated April 15 purchase. To sustain a conviction for attempt, the government had to show that Jones had the intent to commit the offense and took a substantial step toward completing it. *See United States v. Carrillo*, 435 F.3d 767, 777 (7th Cir. 2006). Jones argues that the government did not prove that he took a "substantial step" because no one saw him arrive at Delgado's house or confirmed that he had the money to complete the purchase. He compares his case to *United States v. Cea*, 914 F.2d 881 (7th Cir. 1990). There, we concluded that there was insufficient evidence of a substantial step to support a conviction for attempt to possess cocaine. *Id.* at 888. Cea agreed over the telephone to "be over shortly" to buy the drugs and was arrested upon leaving his home shortly thereafter. *Id.* But there was no evidence where the deal was to take place or where Cea was going when he left his home, leaving this court to conclude that "[s]upposition will not suffice" to show that Cea was going to complete a drug transaction. *Id.* By comparison, here Jones said he was headed to Delgado's home, an officer surveilling the property testified that the supplier had arrived, and the supplier was later stopped with the cocaine in his possession.

Jones appears to counter that his recorded calls with Delgado were improperly presented to the jury because the statements made in them are hearsay. He argues that because Delgado was not charged as a coconspirator, anything that Delgado said on the intercepted calls is inadmissible. We note first that just because Delgado was not charged with conspiracy in the same indictment as Jones (indeed, Delgado later pleaded guilty to conspiracy to possess and distribute drugs and the indictment detailed the April 15 sale) does not mean that he is not a coconspirator for the purposes of Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See United States v. Rea*, 621 F.3d 595, 604–05 (7th Cir. 2010); *Moon*, 512 F.3d at 363. Moreover, if Delgado's statements concerning the price of cocaine and the supplier's arrival time were presented to show that Jones intended to purchase drugs, they would not be hearsay because they were not presented for the truth of the matter asserted. *See* FED. R. EVID. 801(c)(2). And Jones's own statements, of course, were admissible as admissions of a party opponent pursuant to Rule 801(d)(2)(A), without reference to the coconspirator rule. *See United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993).

Finally, Jones argues that at trial the government and district court constructively amended the count of the indictment charging use of a firearm in furtherance of a drug crime. A constructive amendment to an indictment is more than a variation in proof; it occurs when the court or the government broadens the possible bases for conviction beyond those presented to the grand jury. *See United States v. Turner*, 836 F.3d 849, 863 (7th Cir. 2016). Jones argues that because the indictment alleges that he possessed the firearm on June 6, 2012, the government had to prove that he used it in furtherance of the drug-trafficking conspiracy that day. But Jones was convicted of a conspiracy that ran from February 2010 through June 6, 2012. And conspiracy is the crime he was accused of using the firearm to further.

Moreover, the government was not required to prove a specific drug transaction or other act in furtherance of the alleged conspiracy during which Jones used the gun. To show that he possessed the gun "in furtherance of" the conspiracy, the government was required to "present a viable theory as to how the gun furthered" the drug conspiracy and "present specific, non-theoretical evidence to tie that gun and the drug crime together under that theory." *United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005). To establish the nexus, the court uses common sense and consults the nonexhaustive list of factors set forth in *United States v. Seymour*, 519 F.3d 700 (7th Cir. 2008). *See United States v. Eller*, 670 F.3d 762, 766 (7th Cir. 2012).

Jones does not dispute the jury's finding that he possessed the gun, which was found inside his car that was parked in a garage Jones controlled. And the government established a nexus between the firearm and the drug conspiracy: Jones ran a drug-trafficking conspiracy out of a building located feet from the garage, Jones stored heroin in the car, and the gun was found next to thousands of dollars in presumed buy money or proceeds. *See United States v. Morris*, 576 F.3d 661, 670–72 (7th Cir. 2009). A gun's proximity to drugs or drug profits supports the "in furtherance" element. *Seymour*, 519 F.3d at 715. The jury was entitled to conclude that the gun was "not used for ordinary personal protection but rather to thwart those who might try to relieve [the defendant] of his inventory and profits." *See United States v. Fouse*, 578 F.3d 643, 651 (7th Cir. 2009). And it is "unanimously accepted" that a gun can further a drug-trafficking offense "by providing the dealer, his stash[,] or his territory with protection." *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005).

We have considered Jones's other arguments and none has merit.

AFFIRMED